**Charles LUCK, Appellant,**

v.

**D.C. PAROLE BOARD, et al.**

No. 90–7179.

United States Court of Appeals, District of Columbia Circuit.

Argued May 12, 1992.

Decided June 25, 1993.

Following Certification of Question of Law to the D.C. Court of Appeals.

Katherine J. Henry, Washington, DC (appointed by the court), argued the cause for appellant. Charles Luck, also entered an appearance pro se.

Mary L. Wilson, Asst. Corp. Counsel, Washington, DC, argued the cause for appellees. With her on the brief were John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, DC.

Before EDWARDS, BUCKLEY, and SENTELLE, Circuit Judges.

Opinion PER CURIAM.

**PER CURIAM:**

Charles Luck appeals the dismissal of his complaint requesting a declaratory judgment against the Chairman of the District of Columbia Parole Board and the Director of the D.C. Department of Corrections (collectively, "the District authorities"). Luck contends that the Parole Board improperly denied him credit against his criminal sentence for time spent on parole, in violation of the District of Columbia's Good Time Credit Act. Finding the district court's dismissal proper under both the Act and the equal protection component of the Fifth Amendment's Due Process Clause, we affirm.

## I. BACKGROUND

In April 1970, Charles Luck was sentenced in the United States District Court for the District of Columbia to a term of eight to twenty-four years for various violations of the D.C. criminal code. Three years later, Luck escaped from prison but was immediately arrested for a crime committed in Maryland. On May 15, 1978, after approximately five years of incarceration in Maryland, he was returned to the District's custody. Because he could not receive credit against his D.C. sentence for the period of his Maryland imprisonment, the D.C. Department of Corrections advanced his release date from 1994 to July 31, 1998.

Luck was released on parole by the District authorities on November 5, 1982. Four-and-a-half years later, on March 30, 1987, the Parole Board issued a warrant for Luck's arrest for violation of the conditions of his release; and he was taken into custody by the police on April 13, 1987, just two days after the District's landmark parole reform legislation, the Good Time Credit Act, had taken effect. *See* D.C.Code Ann. §§ 24–428 to 24–434 (1989 & Supp.1992); *see also Poole v. Kelly,* 954 F.2d 760, 761 (D.C.Cir.1992) (noting that the Act became effective on April 11, 1987). In recomputing Luck's sentence, the Board denied him credit for the four-and-a-half years he had spent on parole for his D.C. offenses and established a new release date of January 5, 2003.

On July 1, 1987, Luck was again released on parole; two years later, he again broke the conditions of his parole. On August 21, 1989, the Board issued a warrant for Luck's arrest; and he was apprehended in October 1989.

Initially, the Board planned not to give Luck credit for his "street time" during this second parole period. After Luck brought this action, the Board changed its position and credited his most recent parole time up to the date of the arrest warrant's issuance (July 1, 1987, to August 20, 1989) toward his sentence because that time had been served after the Act's effective date. The Board refused, however, to credit the time Luck was previously free on parole, namely, the period from November 5, 1982, to April 13, 1987.

On October 30, 1990, District Judge Royce Lamberth ruled on Luck's claims. *Luck v. Chairman, D.C. Parole Board,* No. 90–0775, mem. op., 1990 WL 179928 (D.D.C. Oct. 30, 1990). Finding that "the [Good Time Credit] Act was intended to be applied prospectively," *id.* at 4, and that Luck's constitutional claims were without merit, *id.* at 7, the court dismissed Luck's complaint with prejudice, *id.* at 8. This appeal followed.

## II. DISCUSSION

Luck argues that the Good Time Credit Act entitled him to a credit against his remaining sentence for the time he spent on parole before April 11, 1987, the effective date of the Act, because his sentence was recomputed after that date. He bases his claim on the following section of the Act:

> Every person shall be given credit on the maximum and the minimum term of imprisonment for time spent in custody or on parole as a result of the offense for which the sentence was imposed. When entering the final order in any case, the court shall provide that the person be given credit for the time spent in custody or on parole as a result of the offense for which sentence was imposed.

D.C.Code Ann. § 24–431(a). In the alternative, he asserts that if the Act does not grant the credit he seeks, it violates the equal

protection component of the Due Process Clause of the Fifth Amendment.

## A. Interpretation of the Good Time Credit Act

■ As noted, Luck's statutory argument is based on his construction of section 24–431(a) of the D.C.Code. Because his claim presented a question of District of Columbia law, the resolution of which was uncertain, *see Tidler v. Eli Lilly & Co.*, 851 F.2d 418, 426 (D.C.Cir.1988), we certified the following question to the District of Columbia Court of Appeals:

> Did the District of Columbia Parole Board and the District of Columbia Department of Corrections properly interpret section 24–431(a) of the Code of the District of Columbia in deciding that time spent on parole prior to April 11, 1987, cannot be credited against a person's sentence when that person's sentence is recomputed after April 11, 1987?

*Luck v. D.C. Parole Board*, No. 90–7179, mem. order at 4 (D.C.Cir. June 1, 1992); *see also* D.C.Code Ann. § 11–723 (1989) (permitting the certification of questions of law from a "Court of Appeals of the United States"). The D.C. Court of Appeals accepted certification and answered our question in the affirmative. *See Luck v. District of Columbia*, 617 A.2d 509, 515 (D.C.1992). Accordingly, the time between Luck's initial release on parole on November 5, 1982, and the Act's effective date, April 11, 1987, may not be credited against his sentence.

■ The one remaining statutory issue, then, is how to deal with Luck's two days of freedom between April 11 and April 13, 1987, the date he was picked up by the police. The District authorities argue that because a warrant for Luck's arrest had issued on March 30, 1987, Luck was not legally "on parole" during those two days for purposes of section 24–431. They point for support to District of Columbia Code of Municipal Regulations section 601.8, which states that "[t]he Parole Board's issuance of an arrest warrant for a parolee tolls the parole status pending further action by the Parole Board." 35 D.C. Reg. 1077, 1078 (Feb. 19, 1988). Although we acknowledge that this regulation was not adopted in final form until February 9, 1988, nor published in the D.C. Register until February 19, 1988, *see id.* at 1077, and thus cannot bind us in this case, we accept its construction of the Act. Awarding "good time credit" for days spent successfully avoiding an arrest warrant makes little sense. We hold therefore that Luck's "parole" for purposes of the Act ended on March 30, 1987, and that the district court rightly denied him credit for the two days after the Act's effective date that he spent at large as the subject of an outstanding arrest warrant.

## B. Equal Protection

■ Luck also argues that if the District authorities' construction is correct, the Act denies him the equal protection to which he is entitled under the Fifth Amendment's Due Process Clause. *Cf. Bolling v. Sharpe*, 347 U.S. 497, 498–500, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954) (applying an equal protection analysis to official acts of the District of Columbia). Because there is no claim that the Act is drawn on the basis of a suspect classification such as race, national origin, alienage, or gender, *see City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439–41, 105 S.Ct. 3249, 3254–55, 87 L.Ed.2d 313 (1985), the statute must be upheld so long as it is "rationally related to a legitimate state interest." *Id.* at 440, 105 S.Ct. at 3254.

Luck argues that granting credit for days served after the Act's effective date while denying it for days served before then bears no rational relationship to a legitimate purpose in cases where a sentence has been recomputed after the effective date. *Cf. Crosby–Bey v. District of Columbia*, 700 F.Supp. 71, 72–73 (D.D.C.1988) (rejecting a similar equal protection challenge in a case in which the convict's sentence had not been recomputed after the Act's effective date). More specifically, Luck argues that this date-based classification must fail because it is not rationally related to the paramount purpose of the Act: to reduce overcrowding in the District of Columbia's prisons. We disagree.

Luck's claim runs afoul of the Supreme Court's decision in *United States Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980). *Fritz* ap-

plied the rational basis standard to a date-based classification. It upheld a law that prospectively ended entitlements to dual "windfall" benefits under the social security and railroad retirement systems, but left intact dual entitlements which had vested as of a particular date. *Id.* at 177–79, 101 S.Ct. at 460–62. The Court reasoned that

> [t]he task of classifying persons for … benefits … inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration.

*Id.* at 179, 101 S.Ct. at 461 (citation and internal quotation marks omitted) (quoting *Mathews v. Diaz,* 426 U.S. 67, 83–84, 96 S.Ct. 1883, 1893, 48 L.Ed.2d 478 (1976)).

Clearly, the *Fritz* test is met in this case. In its efforts to reduce prison overcrowding, the District of Columbia could properly draw a line at some point in the process. *Cf. Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955) (holding that under the rational basis standard legislative classifications may properly ameliorate part of a perceived problem or implement reform "one step at a time"). And because Parole Board decisions would be made knowing that prisoners would accrue credit for good behavior while on parole only after the Act's effective date, drawing the line at that date was in no way irrational. In this case, as in *Fritz,* "the fact the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration."

For the foregoing reasons, the district court's dismissal of Luck's complaint is

*Affirmed.*