# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 14, 2010     Decided December 17, 2010

No. 09-7034

CHRISTINE A. TATE,
APPELLANT

v.

DISTRICT OF COLUMBIA,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:02-cv-02216)

*Jeffrey M. Hahn*, appointed by the court, argued the cause as *amicus curiae* in support of the appellant. *Matthew T. Reinhard*, appointed by the court, was on brief.

*Christine A. Tate*, *pro se*, filed a brief.

*Sonia Ignatova*, Special Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for the appellee. *Peter J. Nickles*, Attorney General, District of Columbia, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General, District of Columbia, were on brief. *Mary L. Wilson*, Senior Assistant Attorney General, District of Columbia, entered an appearance.

Before: SENTELLE, *Chief Judge*, HENDERSON and ROGERS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Christine A. Tate appeals the district court's summary judgment on each of her four constitutional and five common-law tort claims arising from the 2002 impoundment and sale of her automobile by the District of Columbia (District or D.C.) resulting from her unpaid traffic fines and related fees. *Tate v. District of Columbia,* 601 F. Supp. 2d 132 (D.D.C. 2009). For the reasons set out below, we affirm the judgment on her constitutional claims and remand her D.C. common law claims, which the district court mistakenly dismissed as "conceded."

## I.

On March 12, 2002, the D.C. Department of Public Works (DPW) "booted"[1] Tate's automobile pursuant to D.C. Code § 50-2201.03(k)(1), which then provided that "[a]ny unattended motor vehicle found parked at any time upon any public highway of the District of Columbia against which there are 2 or more outstanding or otherwise unsettled traffic violation notices or notices of infraction . . . may . . . be . . . immobilized in such manner as to prevent its operation . . . by the use of a device or other mechanism which will cause no damage to such vehicle unless it is moved while such device or mechanism is in place," i.e., by a boot. *See also* D.C. Code § 50-2302.05(d)(1) ("A person to whom a notice of infraction has been issued must answer within 30 calendar days of date the notice was issued

---

[1]The "Denver boot" is a large clamp which, when applied to a wheel, renders a vehicle immobile. It is used by municipalities, including the District, to make drivers "pay attention to parking tickets." *Saukstelis v. City of Chicago*, 932 F.2d 1171, 1172 (7th Cir. 1991).

. . . .").[2] Tate does not dispute that as of the booting date she had outstanding at least three unpaid tickets issued in January 2002, one on January 10 and two on January 29. *See* Appellant's Br. 5.[3] At a March 15, 2002 hearing, a hearing examiner waived the late penalty for the January 10, 2002 violation, finding "credible" Tate's explanation she was not aware of the ticket. The hearing examiner nonetheless held Tate liable on the underlying citation and upheld the booting because "[m]ore than 2 tickets relating to the boot remain[ed]." Claytor Decl. Ex. H (Hr'g R. dated March 2002). DPW towed Tate's vehicle to its Addison Road Impound Lot in Maryland on March 26, 2002. On April 9, 2002, DPW moved the vehicle to its Blue Plains Storage Facility for abandoned and junk vehicles (Blue Plains) in Southwest D.C. because the vehicle had remained unclaimed for 15 days.

DPW mailed Tate a written notice on April 12, 2002 advising her that failure to claim her vehicle within 45 days would constitute a "waiver of all right title, and interest" in the vehicle and "consent to the sale of the vehicle at public auction." D.C. Opp'n to Pl's Mot. for Prelim. Inj., Attach. E, *Tate*, C.A.

---

[2]The statute has since been amended to require that two or more tickets be "deemed . . . admitted or . . . sustained after a hearing" in order to trigger the booting. D.C. Code § 50-2201.03(k)(1) (2010). A ticket "shall be deemed admitted" "[i]f a person fails to answer within 60 days." D.C. Code § 50-2303.05(d)(2) (2010).

[3]As of March 14, 2002 the D.C. Department of Motor Vehicles (DMV) records showed Tate had two additional tickets issued in December 2001. Decl. of DMV Chief Hearing Examiner Cassandra Claytor (Claytor Decl.) ¶ 8, *Tate v. District of Columbia*, C.A. No. 02-2216 (filed Apr. 17, 2008). Tate asserts one of these was "not fully adjudicated" because she was appealing it at the time of the boot and the other suffered from "issues with regard to the application and timeliness of application of payment." Appellant's Br. 5.

No. 02-2216 (filed Jan. 23, 2003). Because Tate's address had been misentered into the DPW computer records, however, the notice was mailed to an incorrect address and was returned undelivered. *Id.* Attach. I.

On April 19, 2002, Tate went to Blue Plains and retrieved a suitcase from her vehicle. According to DPW, Tate "would have been informed of th[e] date [of the auction] when she visited the Lot," Decl. of DPW Parking Services Administration's Abandoned Vehicle Operations Program Manager Cynthia Jones ¶ 9, but Tate claimed she did not learn of the impending auction until "[s]ometime in May 2002" when she "visited DMV to inquire about the status of the application of payments for the outstanding tickets and storage fees." First Amended Complaint ¶ 14, *Tate*, C.A. No. 02-2216 (filed July 13, 2004) (Complaint). She then requested an administrative hearing to stop the sale of her vehicle.

At the hearing on May 29, 2002, the hearing examiner dismissed a contested ticket Tate received on November 19, 2001 because it had been tardily entered into the DMV computer system but, according to the hearing record, upheld "the boot, tow and storage fees" because Tate still had "two delinquent remaining" tickets. Claytor Decl. Ex. I, J (Hr'g R. dated May 29, 2002). According to Tate, however, "a stay of the auction was granted" at the hearing, the hearing examiner waived "some of the Blue Plains storage fees and other fees levied on [her] car" and, "[f]ollowing the May 29, 2002 hearing, agents or employees of the District notified [Tate] that she had until June 7, 2002 to reclaim her vehicle." Complaint ¶¶ 14-15 (filed July 13, 2004); Pl's Opp'n to Def.'s Mot. for Summ. J., at 10, *Tate v. District of Columbia*, C.A. No. 02-2216 (filed June 30, 2008) (Second Opposition); Pl's Opp'n to Def.'s Mot. for Summ. J., Attach. 1, Ex. K (filed May 19, 2008) (First Opposition) (9/23/2002 computer screen printout stating: "All Tow & Storage Fees Release Per HR 778/5/29/02"). She further

asserted that when she again visited Blue Plains on June 7, 2002, she was informed her vehicle had been sold at public auction on June 4, 2002. District records confirm Tate's vehicle was sold at auction on that date for $4,000.

On November 12, 2002, Tate filed this action in district court. Her complaint alleges causes of action under 42 U.S.C. § 1983 for depriving her of rights guaranteed by the Fourth and Fifth Amendments to the United States Constitution (Counts I-IV) and under D.C. law for various common law torts (Counts VI-X).[4] On February 27, 2009, the district court granted D.C.'s summary judgment motion on all 9 counts. Tate filed a timely notice of appeal.

## II.

We review a grant of summary judgment de novo. *Porter v. Shah*, 606 F.3d 809, 813 (D.C. Cir. 2010). Summary judgment is appropriate " 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.' " *Id.* (quoting Fed. R. Civ. P. 56(c)) (other internal quotation omitted). "In assessing whether a genuine issue exists, we view the evidence in the light most favorable to the nonmoving party." *Id.* (internal quotations omitted). Applying this standard to each of Tate's claims, we conclude the District was entitled to summary judgment on each of the four section 1983 counts. The five pendent counts under D.C. law should be remanded for further consideration.

### A. Section 1983 Claims

Tate contends that the District's actions in booting, impounding and selling her vehicle deprived her of her rights under the Fifth Amendment's Due Process Clause, Takings

---

[4]The complaint contains no Count V.

Clause and Equal Protection guarantee and the Fourth Amendment's prohibition against unreasonable seizure. We address each in turn.

We first consider Tate's due process claim. *See* U.S. Const. amend. V ("[N]or [shall any person ]be deprived of life, liberty, or property, without due process of law . . . ."). Tate asserts the District deprived her of property—her vehicle—without due process of law because, viewing the facts in the light most favorable to her, the District told her it would auction the vehicle on June 7, 2002 but in fact did so on June 4, 2002 and, further, the District auctioned the vehicle without the requisite 45-day notice to her of the sale. *See* D.C. Code § 50-2623(a) (2001) ("If an abandoned vehicle has not been reclaimed, the Abandoned and Junk Vehicle Division shall sell the vehicle at public auction."); *id.* § 50-2602(6)(E) (2001) ("[T]he term '[a]bandoned vehicle' means any motor vehicle . . . [t]hat has remained unclaimed for 45 days after proper notice."). That the District may have misstated the auction date or violated its own statutory notice requirement does not mean that it deprived Tate of the process due under the Fifth Amendment. "[T]he fact of a state law violation does not resolve whether a plaintiff has been deprived of due process." *Barwood, Inc. v. District of Columbia*, 202 F.3d 290, 294 (D.C. Cir. 2000) (quoting *Comm. of U.S. Citizens Living in Nicaragua v. Reagan*, 859 F.2d 929, 944 (D.C. Cir. 1988)). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Tate had meaningful notice of her infractions and a series of hearings to contest them, culminating in the hearing on May 29, 2002, which she requested for the specific purpose of challenging the sale of her vehicle at auction. If the District subsequently sold it prematurely, that fact may well give rise to a common law tort under D.C. law but it did not deprive her of the only process due—namely, timely notice and a hearing.

Tate does not challenge the adequacy of the administrative hearings themselves. Moreover, she offers no competent evidence that the hearing officer or any other District employee told her the June 4, 2002 sale was stayed but relies solely on the allegations of her complaint. *See* Fed. R. Civ. P. 56(e)(2) (2008) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."); *Bush v. District of Columbia*, 595 F.3d 384, 386 (D.C. Cir. 2010) ("In opposing the District's motion, plaintiffs relied upon several paragraphs in their second amended complaint. This of course did not satisfy their burden. Rule 56(e) of the Federal Rules of Civil Procedure barred them from resting upon 'mere allegations.' ") (quoting pre-2007 amendments version of rule).[5]

Nor did the impoundment and subsequent sale of Tate's booted vehicle constitute a taking for a public use for which she was entitled to compensation under the Fifth Amendment's Takings Clause. *See* U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just compensation."). In *Bennis v. Michigan*, 516 U.S. 442, 453 (1996), the United States Supreme Court rejected a similar Takings Clause argument advanced by a spouse whose interest in a jointly owned automobile was forfeited pursuant to a state indecency statute after her husband engaged in sexual activity with a prostitute inside the vehicle. After first determining the forfeiture did not violate the wife's Fourteenth Amendment due process right, the Court explained:

---

[5]The district court expressly advised Tate of her evidentiary burden. *See* Order, *Tate*, C.A. No. 02-2216 (filed Apr. 25, 2008).

> [I]f the forfeiture proceeding here in question did not violate the Fourteenth Amendment, the property in the automobile was transferred by virtue of that proceeding from petitioner to the State. The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain.

*Bennis*, 516 U.S. at 452. The Court concluded that cases authorizing such forfeitures were " 'too firmly fixed in the punitive and remedial jurisprudence of the country to be now displaced.' " *Bennis*, 516 U.S. at 453 (quoting *J.W. Goldsmith, Jr.-Grant Co. v. United States*, 254 U.S. 505, 511 (1921)). Here too, if the District's impoundment of Tate's vehicle did not deprive her of due process—and we have already concluded it did not—then there was no unlawful taking and no compensation is due for the lawful taking that did occur, which, as in *Bennis*, was effected through "the exercise of governmental authority other than the power of eminent domain." The District's practice of auctioning a vehicle when tickets go unpaid is the culmination of a sort of graduated forfeiture process. Under the statutory process as in effect in 2001-02 when Tate received the tickets at issue, a car is first ticketed for a parking or traffic infraction, then if the ticket goes unpaid for 30 days, the vehicle may be booted or towed to an impound lot, and, if unclaimed after 45 days, it may be declared abandoned and sold at auction. D.C. Code § 50-2201.03(k)(1) (2001); *id.* § 50-2302.05(d)(1) (2001); *id.* § 50-2623(a) (2001); *id.* § 50-2602(6)(E) (2001). This procedure—which both deters drivers from committing traffic and parking infractions in the first instance and induces delinquents to pay penalties once incurred—is, like the *Bennis* forfeiture process, "firmly fixed in the punitive and remedial jurisprudence of the country." We therefore conclude the practice does not constitute a taking without compensation violative of the Fifth Amendment.

Third, we consider and reject Tate's Fifth Amendment equal protection argument. *See Bolling v. Sharpe*, 347 U.S. 497, 499-500 (1954) (finding equal protection component to Fifth Amendment's Due Process Clause notwithstanding absence of express equal protection guarantee). Tate contends the District violated the Fifth Amendment's Equal Protection guarantee in two respects. She first claims she was singled out for harsh treatment because of her complaints to and about the D.C. Metropolitan Police Department. But she has not identified any similarly situated person (with a comparable ticket record) who was treated differently. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (recognizing that "successful equal protection claims [may be] brought by a 'class of one' " but only "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment").

Tate also claims she was treated differently from other offenders who benefitted from a ticket amnesty program enacted by the D.C. City Council in 2002 for tickets issued before January 1, 1997. *See* Motor Vehicle Registration and Operator's Permit Issuance Enhancement Emergency Amendment Act of 2002 (amending D.C. Code § 50-1501.02 to forgive pre-January 1, 1997 tickets and allow offenders to obtain registration certificate or license tag notwithstanding outstanding ticket fines). Because the date-based classification in the statute "neither involv[es] fundamental rights nor proceed[s] along suspect lines," rational basis review applies. *Steffan v. Perry*, 41 F.3d 677, 684 (D.C. Cir. 1994) (en banc) (quoting *Heller v. Doe*, 509 U.S. 312, 319 (1993)). "The government, 'moreover, has no obligation to produce evidence to sustain the rationality of a [regulatory] classification' "; instead, the classification " 'is accorded a strong presumption of validity,' " and " '[t]he burden is on the one attacking the [governmental] arrangement to negative every conceivable basis

which might support it,' whether or not the basis has a foundation in the record.' " *Id*. (quoting *Heller*, 509 U.S. at 319-21) (internal citations omitted). Tate has not carried her heavy burden. We upheld a similar date-based classification in *Luck v. D.C. Parole Bd.*, 996 F.2d 372, 374 (D.C. Cir. 1993). There, we found no equal protection violation in D.C. legislation that allowed time on parole to be credited as time served but only for parole time occurring after the legislation's effective date. Observing that "[i]n its efforts to reduce prison overcrowding, the District of Columbia could properly draw a line at some point in the process," we concluded that "the fact the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration." *Id*. 375; *see also U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980) ("The task of classifying persons for . . . benefits . . . inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration.") (internal quotation omitted). So too, in reducing the ticket backlog and the number of unregistered or unlicensed vehicles on its streets, the District was entitled to draw the eligibility line somewhere or incur a substantial loss of revenue. Tate has not offered any reason to believe that the line drawn (at five years) was "irrational." *See Luck*, 996 F.2d at 374.

Finally, Tate argues the booting, towing and sale of her vehicle constituted an unreasonable seizure in violation of the Fourth Amendment. *See* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

violated . . . ."). We reject her Fourth Amendment challenge for the following reasons.[6]

First, Tate asserts there are genuine issues of disputed fact precluding the district court's determination that the warrantless seizure of Tate's vehicle was reasonable.[7] We disagree. As we have explained, the District's statutory impoundment provisions constitute the equivalent of a graduated forfeiture procedure. *See supra* p. 8. Like other forefeiture statutes, the District's booting and towing provisions can be effected by the warrantless seizure of a vehicle subject to impoundment thereunder.

In *Florida v. White*, 526 U.S. 559 (1999), the Supreme Court upheld the warrantless seizure of an automobile because the police had probable cause to believe the vehicle was contraband subject to forfeiture under the Florida Contraband Forfeiture

---

[6]For our analysis, we assume, without deciding, that booting constitutes a Fourth Amendment seizure. *But see Grant v. City of Chicago*, 594 F. Supp.1441, 1451 (E.D. Ill. 1984) (concluding otherwise).

[7]Tate objects in particular to the district court's reliance on the "community caretaking doctrine," *see* 601 F. Supp. 2d at 136 (citing *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976), because when it was booted and towed, her vehicle "was LEGALLY parked and NOT impeding traffic or a threat to public safety or convenience." Appellant's Br. 25 (quoting *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976)) (upper case by Appellant). Tate is correct that booting is not about caretaking: it "does not promote the flow of traffic." *Saukstelis v. City of Chicago*, 932 F.2d 1171, 1173 (7th Cir. 1991). Rather, as noted earlier, booting and subsequent impoundment, like other ticketing measures, have a deterrent and remedial purpose—they deter and punish delinquent payment of fines. *See supra* p. 8; *Bennis*, 516 U.S. at 451-52.

Act.[8]  The Court based its holding on two principles: (1) the historically rooted "[r]ecognition of the need to seize readily movable contraband"—a need that is "equally weighty when the automobile, as opposed to its contents, is the contraband that the police seek to secure"—and (2) the "greater latitude" that "Fourth Amendment jurisprudence has consistently accorded law enforcement officials . . . in exercising their duties in public places."  526 U.S. at 565.  Other circuits have applied these principles to uphold the warrantless seizures of contraband vehicles. *See United States v. Gaskins*, 364 F.3d. 438, 458-59 (2d Cir. 2004) (upholding warrantless search of vehicle forfeitable under 21 U.S.C. § 881 because used to carry contraband); *United States v. Smith*, 510 F.3d 641, 650-51 (6th Cir. 2007) (same); *United States v. Alvarez-Tejeda*, 491 F.3d 1013, 1016-18 (9th Cir. 2007) (same). We do so here as well. On March 12, 2002, when it booted Tate's vehicle, DPW had probable cause to believe that Tate's vehicle was subject to booting and/or towing under D.C. Code §§ 50-2201.03(k)(1) and 50-2302.05(d)(1) (2001) because there were then at least two tickets (issued January 29, 2002) that had been outstanding for more than 30 days and remained unpaid or otherwise resolved. Although these cases involved a criminal prosecution following

---

[8]When *White* was decided, the Florida Act's forfeiture provision stated: "Any contraband article, vessel, motor vehicle, aircraft, other personal property, or real property used in violation of any provision of the Florida Contraband Forfeiture Act, or in, upon, or by means of which any violation of the Florida Contraband Forfeiture Act has taken or is taking place, may be seized and shall be forfeited." Fla. Stat. § 932.703(1)(a) (1997).  The Act defined "contraband" to include any "vehicle of any kind, . . . which was used . . . as an instrumentality in the commission of, or in aiding or abetting in the commission of, any felony."  *Id*. § 932.701(2)(a)(5).  Before White's vehicle was seized, police observed him using it to deliver cocaine on three occasions, giving the police probable cause to believe it was contraband under the Act. *White*, 526 U.S. at 561-62.

the arrest of the owner or occupant of the vehicle, their reasoning applies to the District's progressive forefeiture regime. Although a parking violation is a civil infraction, D.C. Code § 50-2301.01, the auction sale for delayed payment is comparable to a forfeiture that occurs as a result of a criminal and to a forfeiture under the Internal Revenue Code. *See C.I.R. v. Shapiro*, 424 U.S. 614, 616-17 (1976); *c.f. United States v. James Daniel Good Real Property*, 510 U.S. 43, 60-61 (1993 (citing cases).

Next, Tate makes both a "facial" and an "as applied" argument that auctioning a vehicle is a disproportionate response to two outstanding tickets. Appellant's Br. 28-29. This challenge does not make out a claim under the Fourth Amendment which by its plain terms applies to "unreasonable . . . seizures." The sale itself was not a "seizure" of Tate's vehicle which was already in the District's lawful possession and control. *See California v. Hodari D.*, 499 U.S. 621, 624 (1991) ("From the time of the founding to the present, the word 'seizure' has meant a 'taking possession.' " (citing 2 N. Webster, An American Dictionary of the English Language 67 (1828); 2 J. Bouvier, A Law Dictionary 510 (6th ed. 1856); Webster's Third New International Dictionary 2057 (1981)). The sale of the vehicle is properly subject to constitutional challenge, if at all, under the Fifth Amendment as an unlawful taking or a violation of due process and we have already rejected Tate's challenges on these grounds.

### B. Common Law Claims

Tate's complaint also alleges causes of action under D.C. law for conversion, promissory estoppel, negligent misrepresentation, unjust enrichment and intentional and reckless infliction of emotional distress. Tate contends the district court erred when it dismissed these claims as "conceded" on the ground Tate had "not addressed in her opposition brief the defendant's valid arguments against her common law claims." 601 F. Supp. 2d at 138 (citing Local Civil Rule (LCvR) 7(b) (if

party fails to file timely "memorandum of points and authorities in opposition to [a] motion," "Court may treat the motion as conceded"). We agree.

Tate filed two pleadings opposing the District's summary judgment motion, the First Opposition on May 19, 2008 and the Second Opposition on June 30, 2008. Our review of pleadings drafted by a pro se plaintiff like Tate is "subject to 'less stringent standards than formal pleadings drafted by lawyers.' " *Gray v. Poole*, 275 F.3d 1113, 1115 (D.C. Cir. 2002) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Under this standard, we find Tate's First Opposition did indeed "address" the District's arguments on the common law claims, albeit without specifically mentioning the claims. In her First Opposition, Tate asserted that, at the May 29, 2002 hearing, the Blue Plains towing and storage fees were waived and she was led to believe "the sale of her car had been stopped," First Opposition at 5, 6, 8, and she argued in particular that the District sold her vehicle "for thousands of dollars and . . . kept all of the proceeds from the sale," *id*. at 8. These factual allegations, if proved, contradict the District's defense that the June 4, 2002 sale complied with District law and that Tate had notice of the sale date, thereby bolstering her common law claims for conversion, promissory estoppel, misrepresentation, unjust enrichment and infliction of emotional distress. Moreover, in her Second Opposition, Tate made it clear she opposed the District's arguments on the common law, as well as the federal, claims. *See* Second Opposition at 1 ("The District of Columbia . . . violated Plaintiff's rights under the Fourth and Fifth Amendments, common law and District of Columbia Code."). We therefore conclude that the district court erroneously failed to consider the merits of Tate's arguments regarding her common law claims. *See Malik v. District of Columbia*, 574 F.3d 781, 786 (D.C. Cir. 2009). Accordingly, we remand Tate's five state law causes of action to the district court. On remand, the court is free to decline to exercise supplemental jurisdiction over the common

law claims inasmuch as we have upheld its summary judgment grant on all of the claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3); *see Shekoyan v. Sibley Int'l.*, 409 F.3d 414, 423 (D.C. Cir. 2005).

For the foregoing reasons, we affirm the district court's summary judgment grant to the District on Counts I-IV of the First Amended Complaint and remand Counts VI-X for the district court to determine in its discretion whether to decide their merits or to dismiss them without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

*So ordered.*