*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

―――――――――

### UNITED STATES
Appellee

**v.**

### Timothy B. HENNIS, Master Sergeant
United States Army, Appellant

### No. 17-0263
Crim. App. No. ARMY 20100304

Argued October 10, 2017—Decided November 20, 2017

Military Judge: Patrick Parrish

For Appellant: *Captain Timothy G. Burroughs* (argued); *Lieutenant Colonel Christopher Daniel Carrier*.

For Appellee: *Captain Samuel E. Landes* (argued); *Colonel Tania M. Martin, Colonel Mark H. Sydenham, Lieutenant Colonel A. G. Courie III; Lieutenant Colonel Eric K. Stafford*, and *Captain Catharine M. Parnell*.

Judge OHLSON delivered the opinion of the Court, in which Chief Judge STUCKY, Judges RYAN and SPARKS, and Senior Judge COX, joined.[1]

―――――――――

Judge OHLSON delivered the opinion of the Court.

Appellant's case is before this Court for mandatory review under Article 67(a)(1), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 867(a)(1) (2012). Appellant has filed a consolidated motion requesting, in relevant part, appointment of appellate defense team members pursuant to the Army's capital litigation regulation, as well as funding for learned counsel, a mitigation specialist, and a fact investigator. We conclude that this Court does not have the constitutional, statutory, or regulatory authority to provide Ap-

―――――――――

[1] Senior Judge Cox's participation in this case is limited to resolving the consolidated motion.

pellant with the relief he seeks. Accordingly, we deny Appellant's motion.[2]

## I. Introduction

In May 1985, the wife, five-year-old daughter, and three-year-old daughter of an Air Force captain were murdered in Fayetteville, North Carolina. Appellant, who was a member of the Army at the time of the murders, was initially tried for these crimes in state court. He was convicted of the offenses at his first trial, but those convictions were overturned upon appellate review by the North Carolina Supreme Court. At his second trial in state court in 1989, Appellant was acquitted.

Following his acquittal in state court, Appellant returned to active duty with the Army and served until his retirement in 2004. However, after his retirement, DNA testing linked Appellant to the Fayetteville murders. The Army ordered Appellant to active duty and initiated court-martial proceedings against him in 2006.

Contrary to his pleas, a general court-martial with enlisted representation convicted Appellant of three specifications of premeditated murder, in violation of Article 118, UCMJ, 10 U.S.C. § 918 (2012). The court-martial sentenced Appellant to a dishonorable discharge, forfeiture of all pay and allowances, reduction to E-1, and to be put to death. The convening authority approved the sentence, and the United States Army Court of Criminal Appeals (CCA) affirmed the findings and the death sentence. *United States v. Hennis*, 75 M.J. 796 (A. Ct. Crim. App. 2016) (en banc). Appellant's case is now before us pursuant to Article 67(a)(1), UCMJ.

Appellant is represented in this Court by two attorneys: Lieutenant Colonel (LTC) Christopher Daniel Carrier and

---

[2] Appellant's consolidated motion also requests that we hold oral argument in this matter and that we stay the proceedings pending receipt of the resources he is seeking. Because we already have held oral argument on the consolidated motion, Appellant's request for oral argument is denied as moot. Further, in light of our conclusion that we have no authority to require the Government to provide Appellant with the requested resources, we also deny the request for a stay pending receipt of these resources. A separate briefing order will follow this opinion.

Captain (CPT) Timothy G. Burroughs. Neither is "learned counsel."[3] Appellant's lead counsel, CPT Burroughs, has no experience litigating capital cases, defending an accused at court-martial, contesting a case before a court-martial panel, or investigating and presenting a mitigation case. However, he does have limited experience with military appeals. CPT Burroughs also carries a full caseload in his role as a military appellate defense counsel, representing twenty-seven other clients in addition to Appellant.

LTC Carrier, a former military judge, serves as the supervising counsel in Appellant's case. Given his duties as the chief of capital and complex litigation, LTC Carrier is unable to wholly devote himself to Appellant's case. Further, LTC Carrier has never prosecuted or defended an accused in a capital case and has minimal experience with capital appeals.

In addition, Appellant does not have the assistance of a mitigation specialist or a fact investigator in this case, despite making numerous requests to the CCA and various Army officials.

## II. Discussion

In the motion before us, Appellant requests appointment of an appellate defense team pursuant to the Army's capital litigation regulation, and funding for learned counsel, a mitigation specialist, and a fact investigator. We will address each of these requests in turn.

### A. Appellate Defense Team

The Army's capital litigation regulation does not provide a basis for the relief sought by Appellant. A key provision of the regulation states: "The *suggested* capital litigation team serves as a *guideline*." Dep't of the Army, Reg. 27-10, Legal Services, Military Justice para. 28-6.*a.* (May 11, 2016) [hereinafter AR 27-10] (emphasis added). This language "by its own terms [is] hortatory, rather than mandatory" and thus does not create a binding right. *United States v. Sloan*, 35

---

[3] "Learned counsel" is an attorney knowledgeable in the law applicable to capital cases. *United States v. Akbar*, 74 M.J. 364, 399 (C.A.A.F. 2015).

M.J. 4, 9 (C.M.A. 1992). Moreover, even if Appellant did have a binding right under this regulation, a review of its provisions as a whole demonstrates that the regulation was intended to apply to *trial* defense teams rather than to *appellate* defense teams. *See generally* AR 27-10 ch. 28. We therefore conclude that this Court does not have the authority to mandate the appointment of an appellate defense team pursuant to the provisions of the Army's capital litigation regulation.

## B. Learned Counsel

This Court similarly does not have the authority to mandate funding for learned counsel in this case. As an initial matter, there currently is no requirement for the appointment of learned counsel in military capital cases. *Akbar*, 74 M.J. at 399; *see also* Articles 27(b)(1), 70(a), UCMJ, 10 U.S.C. §§ 827(b)(1), 870(a) (2012). We recognize that the Military Justice Act of 2016 substantially amends Article 70, UCMJ, by requiring "[t]o the greatest extent practicable, in any capital case, at least one defense counsel … be learned in the law." Military Justice Act of 2016, Pub. L. No. 114-328, § 5334, 130 Stat. 2000, 2936 (2016). However, the "to the greatest extent practicable" language makes plain that there is no statutory *requirement* for learned counsel.

More importantly, it is clear that the pending amendment to Article 70, UCMJ, applies only to future military capital cases and not to Appellant's case. *See id.* § 5542(a), (c)(2), 130 Stat. at 2967–68. Specifically, the amendment states that it does not apply to "any case in which charges are referred to trial by court-martial before the effective date of such amendments." *Id.* § 5542(c)(2), 130 Stat. at 2967. Further, it states that proceedings in such cases "shall be held in the same manner and with the same effect as if such amendments had not been enacted." *Id.* § 5542(c)(2), 130 Stat. at 2967–68. Appellant's case was referred long before the effective date of the amendment. Therefore, Appellant is not entitled to any relief pursuant to the amendment's provisions.

Appellant next identifies two separate constitutional rights as the basis for his learned counsel request: the equal protection component of the Fifth Amendment's Due Process

Clause, and the right to effective assistance of appellate counsel. However, as shown below, neither constitutional right mandates funding for learned counsel.

We first turn to Appellant's equal protection claim that he must be treated in a similar manner to future appellants in capital cases. The distinction drawn between Appellant—who is not entitled to learned counsel under the Military Justice Act of 2016—and future capital appellants—who may be entitled to learned counsel under the provisions of that act—is not based on a constitutionally suspect classification such as race, religion, or national origin. Nor does this distinction interfere with Appellant's fundamental constitutional rights. *See United States v. Gray*, 51 M.J. 1, 22–23 (C.A.A.F. 1999). Absent a suspect classification or interference with a fundamental right, all that is needed for the statute to withstand constitutional scrutiny is a rational basis for the distinction between Appellant and future capital appellants. *See Akbar*, 74 M.J. at 406; *Tate v. District of Columbia*, 627 F.3d 904, 910 (D.C. Cir. 2010). We conclude that such a rational basis exists. Congress presumably delayed the effective date and implementation of Article 70, UCMJ, in order to provide the government with adequate time to train appellate defense counsel, write and implement regulations pertaining to learned counsel, and allocate funding to pay for the training and use of learned counsel in capital cases. We therefore reject Appellant's equal protection argument.

We next consider Appellant's reliance on the right to effective assistance of appellate counsel. *See United States v. Brooks*, 66 M.J. 221, 223 (C.A.A.F. 2008). This question is not yet ripe because we review ineffective assistance of counsel claims *after* we have a record of counsel's performance. *See United States v. Marshall*, 45 M.J. 268, 270 (C.A.A.F. 1996); *see also Maryland v. Kulbicki*, 136 S. Ct. 2, 4 (2015) (per curiam). We recognize that LTC Carrier and CPT Burroughs have very limited experience in capital cases, and this inexperience ultimately may be a factor in determining whether counsel's performance was ineffective. *See United States v. Cronic*, 466 U.S. 648, 665 (1984); *United States v. Murphy*, 50 M.J. 4, 13 (C.A.A.F. 1998). However, as we have noted in the past, "limited experience does not raise

a presumption of ineffectiveness." *United States v. Loving*, 41 M.J. 213, 300 (C.A.A.F. 1994) (citing *Cronic*, 466 U.S. at 665). Accordingly, we conclude there is no basis for this Court to grant Appellant's request to require funding for learned counsel.[4]

## C. Experts

Similarly, there is no basis for this Court to mandate funding for a mitigation specialist or fact investigator in this case. In resolving the request for expert assistance, we will assume arguendo that this Court is the proper forum for such a request. *But see United States v. Gray*, 40 M.J. 25, 25 (C.A.A.F. 1994) (order).[5] Upon doing so, we conclude that Appellant has not met the "reasonable-necessity standard" to establish that he is entitled to have this court mandate expert assistance at this time. *See Gray*, 51 M.J. at 20; *United States v. Tharpe*, 38 M.J. 8, 14 (C.M.A. 1993). Simply stated, it is unclear from the record before us why interviewing witnesses, reviewing documents, and completing certain

---

[4] This conclusion in no way precludes this Court from providing appropriate relief to Appellant in the future if we later determine appellate defense counsel's performance was ineffective.

[5] We note that in a December 20, 2016, memorandum denying the Defense Appellate Division's request for funding of a mitigation specialist and investigator, the convening authority stated that the "request should be forwarded to the U.S. Court of Appeals for the Armed Forces for approval, per AR 27-10, para. 6-5d." This sentence indicates that there may be a misapprehension of this Court's role in a case such as this one. The cited regulation states that "in capital cases … [r]equests for funding [for expert services] … should be made to the appropriate authority," including "the court before which the case is pending." AR 27-10 para. 6-5.*d*. However, the Army does not determine this Court's jurisdiction and responsibilities. This Court reviews lower court rulings of denials of requests for experts. *See United States v. Kreutzer*, 61 M.J. 293 (C.A.A.F. 2005) (determining that the denial of expert assistance from a mitigation specialist was not harmless beyond a reasonable doubt). This Court also reviews rulings on whether the expert assistance provided by the government is competent. *United States v. McAllister*, 55 M.J. 270, 275–76 (C.A.A.F. 2001). However, we take these actions as a court of review, not as part of the chain of command or as some sort of administrative approval authority.

investigative tasks is beyond the ability of the defense team. Further, as previously discussed, Appellant is not entitled to expert assistance under chapter 28 of AR 27-10 because the regulation does not create mandatory requirements and because it applies to *trial* defense teams. Additionally, this regulation only states that the defense team "may" include mitigation specialists and fact investigators. AR 27-10 para. 28-6.*c.* Accordingly, Appellant's request for funding a mitigation specialist and fact investigator is denied.

### III. Conclusion

As explained above, at this point in these appellate proceedings we discern no constitutional, statutory, or regulatory basis for this Court to grant Appellant's requests for an enhanced appellate defense team or for funding for learned counsel, a mitigation specialist, and a fact investigator. However, we note that Congress has clearly expressed its preference that military members charged with capital offenses be provided with learned counsel in the near future, federal law requires the provision of learned counsel upon request in other federal death penalty cases, and most state jurisdictions which still have the death penalty have established minimum qualifications for counsel in such cases.[6] Nevertheless, in deciding a motion such as the one now before us, this Court's task is not to require "what is prudent or appropriate, but only what is constitutionally [and statutorily] compelled." *Cronic*, 466 U.S. at 665 n.38. Appropriate personnel in the Army Judge Advocate General's Corps are not similarly constrained, however, and may most certainly do what is "prudent" and "appropriate" in the instant case.

Appellant's consolidated motion is denied.

---

[6] *See* Stephen C. Reyes, *Left Out in the Cold: The Case for a Learned Counsel Requirement in the Military*, Army Law. 5, Oct. 2010, at 7–11 (identifying jurisdictions with special attorney qualifications for capital cases).