Filed 7/21/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| COALITION ON HOMELESSNESS, Plaintiff and Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, et al., Defendants and Respondents. | A164180 (San Francisco County Super. Ct. No. CPF-18-516456) |

Plaintiff and appellant Coalition on Homelessness (appellant) filed the present action against defendants and respondents the City and County of San Francisco, the San Francisco Municipal Transportation Agency (SFMTA), and the San Francisco Police Department (collectively, respondents) to challenge the SFMTA's policy of towing safely and lawfully parked vehicles without a warrant based solely on the accrual of unpaid parking tickets. Appellant contends the warrantless tows are unreasonable seizures within the meaning of article I, section 13 of the California Constitution and the Fourth Amendment to the United States Constitution (Fourth Amendment).[1] The trial court denied appellant's motion for a writ of mandate and declaratory and injunctive relief. We reverse.

---

[1] "California has generally adopted Fourth Amendment jurisprudence for interpreting analogous provisions of the California Constitution. [Citations.] Our courts therefore apply federal legal standards when

The principal issue on appeal is whether the challenged warrantless tows are permissible under the vehicular community caretaking exception to the Fourth Amendment's warrant requirement.[2] We conclude respondents have not shown that legally parked cars with unpaid parking tickets that present no threat to "public safety and the efficient movement of vehicular traffic" (*S. Dakota v. Opperman* (1976) 428 U.S. 364, 369 (*Opperman*)) may be towed under that exception. In particular, we reject respondents' argument that their interest in deterring parking violations and nonpayment of parking fines justifies warrantless tows under the vehicular community caretaking exception. Such deterrence does not justify warrantless tows of lawfully registered and lawfully parked vehicles. We also reject the proposition that the tows at issue may be justified by analogy to warrantless property seizures in the forfeiture context.

## BACKGROUND

Because the State of California "has preempted the field of motor vehicle traffic regulation," "[a] city has no authority over vehicular traffic control except as expressly provided by the Legislature." (*Save the Sunset Strip Coalition v. City of West Hollywood* (2001) 87 Cal.App.4th 1172, 1177–1178.)

---

analyzing the reasonableness of a search or seizure under California constitutional law." (*People v. Perry* (2019) 36 Cal.App.5th 444, 466.) For convenience, in this decision we reference only the Fourth Amendment.

[2] Although the parties and numerous cases refer to a "community caretaking" exception to the warrant requirement, recent decisions from the United States Supreme Court and the California Supreme Court have clarified that there is no recognized community caretaking exception outside the context of searches and seizures of vehicles. (See *post*, pp. 10–11; *Caniglia v. Strom* (2021) 141 S.Ct. 1596 (*Caniglia*); *People v. Ovieda* (2019) 7 Cal.5th 1034 (*Ovieda*).)

2

Pursuant to Vehicle Code section 22651,[3] the Legislature has authorized vehicle tows in a range of different circumstances. Section 22651, subdivision (i)(1), at issue in the present case, permits tows for unpaid parking citations. Specifically, it permits a peace or parking enforcement officer to tow a vehicle if it "is found upon a highway or public land . . . and it is known that the vehicle has been issued five or more notices of parking violations to which the owner or person in control of the vehicle has not responded within 21 calendar days" of issuance. (§ 22651, subd. (i)(1).) The statute mandates that parking citations warn that multiple citations may result in impoundment: "A notice of parking violation issued for an unlawfully parked vehicle shall be accompanied by a warning that repeated violations may result in the impounding of the vehicle." (§ 22651, subd. (i)(3).)[4]

Once a vehicle has been towed, local authorities may keep it in storage until its owner provides "[s]atisfactory evidence that all parking penalties due for the vehicle . . . have been cleared." (§ 22651, subd. (i)(1)(C).) Alternately, "In lieu of furnishing satisfactory evidence that the full amount of parking penalties or bail has been deposited, that person may demand to

_____

[3] All undesignated statutory references are to the Vehicle Code.

[4] Section 22650, subdivision (b) provides, "Any removal of a vehicle is a seizure under the Fourth Amendment of the Constitution of the United States and Section 13 of Article I of the California Constitution, and shall be reasonable and subject to the limits set forth in Fourth Amendment jurisprudence. A removal pursuant to an authority, including, but not limited to, as provided in Section 22651, that is based on community caretaking, is only reasonable if the removal is necessary to achieve the community caretaking need, such as ensuring the safe flow of traffic or protecting property from theft or vandalism." As explained later in this decision (*post*, p. 21, fn. 15), we need not and do not resolve the parties' contentions regarding the meaning of that provision.

3

be taken without unnecessary delay before . . . a hearing examiner, for parking offenses, within the county where the offenses charged are alleged to have been committed and who has jurisdiction of the offenses and is nearest or most accessible with reference to the place where the vehicle is impounded." (§ 22651, subd. (i)(3).) During such a hearing, "the storing agency shall have the burden of establishing the authority for, and the validity of, the removal." (§ 22650, subd. (c).) Under section 22851.1, subdivision (a), "[i]f the vehicle is impounded pursuant to subdivision (i) of Section 22651 and not released as provided in that subdivision, the vehicle may be sold . . . to satisfy" liens for towing and storage and for the outstanding parking violations.

Appellant challenges the constitutionality of the SFMTA's policy of towing vehicles pursuant to section 22651, subdivision (i)(1) without first obtaining a warrant. In December 2018, appellant filed a petition for writ of mandate and complaint for declaratory and injunctive relief, objecting to this practice.[5] Appellant alleged the warrantless tows violated article I, section 13 of the California Constitution, and, by extension, the Fourth Amendment. Appellant also alleged the tows violated the owners' constitutional due process rights.

Respondents' answer admitted that the SFMTA "does not obtain warrants when it tows vehicles" pursuant to section 22651, subdivision (i)(1) and that, under the SFMTA's policies, "vehicles subject to tow under [that section] may be towed without regard to whether they are legally or safely

---

[5] In addition to respondents, appellant's petition and complaint named AutoReturn, which is SFMTA's towing contractor. AutoReturn did not file a brief on appeal.

4

parked at the time of the tow and without regard to whether the vehicle is involved in any crime."

During the COVID-19 pandemic, the SFMTA ceased ordering tows for unpaid parking citations. In June 2021, the SFMTA resumed ordering such tows pursuant to an altered policy. Pursuant to the amended policy, the SFMTA no longer orders tows of vehicles where the amounts owed are $2,500 or less,[6] and "when a parking enforcement officer . . . can identify that [a] car is being used as shelter, the officer will not place a boot on the car, and also will not direct that the car be towed for unpaid and delinquent parking citations, regardless of the amount of money that is owed on those citations (unless the car is parked in a tow-away zone, in a place that creates a hazard, or in similar circumstances)."[7]

In June 2021, appellant moved for issuance of a writ of mandate and declaratory and injunctive relief. In addition to evidence regarding the SFMTA's policies, appellant presented declarations regarding the severe impacts of vehicle tows on unhoused San Francisco residents. Appellant also presented a declaration from an economist who, among other things, reported data showing that a majority of vehicles towed for "debt collection" were ultimately sold.

---

[6] Cars with unpaid citations not exceeding $2,500 are booted and a bright orange sticker is affixed to a window, notifying the owner the vehicle will be subject to towing if the unpaid citations are not resolved within three days.

[7] The SFMTA also provides certain accommodations to low income owners with outstanding parking citations. For example, owners who are homeless are provided a one-time opportunity to waive all outstanding parking citations and towing fees. And owners who are homeless or low income are allowed to recover towed vehicles without paying the outstanding citations by enrolling in a payment or community service plan.

In September 2021, the trial court denied appellant's motion for a writ of mandate and declaratory and injunctive relief. The court agreed that towing a vehicle is a seizure under the Fourth Amendment, which would ordinarily require a warrant. But the court held the SFMTA's warrantless tows were lawful under the "community caretaking" exception to the warrant requirement, citing *Opperman*, *supra*, 428 U.S. 364. The trial court also rejected appellant's due process claim.[8]

In October 2021, the trial court entered judgment in favor of respondents and AutoReturn, and the present appeal followed.[9]

DISCUSSION

I. *Fourth Amendment Standards*

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and further provides that "no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Fourth Amendment's prohibition against unreasonable searches and

---

[8] Appellant does not challenge that portion of the trial court's order on appeal.

[9] Amicus curiae briefs in support of appellant were filed by (1) the San Francisco Public Defender's Office, Disability Rights California, the Western Center on Law and Poverty, UNITE HERE Local 11, FreeFrom, and the National Homelessness Law Center; and (2) the National Police Accountability Project and the Roderick & Solange MacArthur Justice Center. Respondents filed a response to both amicus briefs. We do not address the policy arguments raised in the amicus curiae briefs, which are properly directed to the Legislature. (*Fort Bragg Unified School Dist. v. Colonial American Casualty & Surety Co.* (2011) 194 Cal.App.4th 891, 909–910 [" 'Crafting statutes to conform with policy considerations is a job for the Legislature, not the courts; our role is to interpret statutes, not to write them.' "].)

6

seizures applies to respondents through the Fourteenth Amendment. (*Soldal v. Cook County, Illinois* (1992) 506 U.S. 56, 61; *Verdun v. City of San Diego* (9th Cir. 2022) 51 F.4th 1033, 1036.) "The Fourth Amendment protects against unreasonable interferences in property interests regardless of whether there is an invasion of privacy." (*Miranda v. City of Cornelius* (9th Cir. 2005) 429 F.3d 858, 862 (*Miranda*), citing *Soldal*, at p. 62; see also *Soldal*, at p. 62 ["our cases unmistakably hold that the [Fourth] Amendment protects property as well as privacy"]; accord, *N. Am. Butterfly Ass'n v. Wolf* (D.C. Cir. 2020) 977 F.3d 1244, 1264.) A property seizure (the type of action challenged in the present case) "occurs when 'there is some meaningful interference with an individual's possessory interests in [his or her] property.' " (*Soldal*, at p. 61.) In the present case, it is undisputed that seizures occur when cars are towed under the SFMTA's towing policy. (See *Miranda*, at p. 862 ["The impoundment of an automobile is a seizure within the meaning of the Fourth Amendment."].)

" 'A seizure conducted without a warrant is per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions. The burden is on the Government to persuade the . . . court that a seizure comes under one of a few specifically established exceptions to the warrant requirement.' " (*Miranda, supra*, 429 F.3d at p. 862; see also *City of Los Angeles v. Patel* (2015) 576 U.S. 409, 419; *Ovieda, supra*, 7 Cal.5th at p. 1041 [" 'The burden is on the People to establish an exception applies.' "].)

" ' " ' "We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth

Amendment, we exercise our independent judgment." ' " ' " (*Ovieda, supra,* 7 Cal.5th at p. 1041.)

II.   *The Vehicular Community Caretaking Exception Is Inapplicable*

Respondents' principal argument on appeal is that the tows are reasonable under the vehicular "community caretaking" exception to the Fourth Amendment's warrant requirement.  We conclude the exception is inapplicable: it is undisputed that the tows do not involve cars that, due to their location, are presenting any threat to public health or convenience at the time of the tow.

The United States Supreme Court in *Cady v. Dombrowski* (1973) 413 U.S. 433, 441 (*Cady*), first articulated the vehicular community caretaking exception.  *Cady* applied the Fourth Amendment to the warrantless search of a car following an accident.  (*Id.* at pp. 436–437.)  The heavily intoxicated driver (and eventual defendant) was a police officer, and the officer who searched the driver's vehicle testified he did so to locate the driver's service revolver.  (*Id.* at pp. 435, 437.)  Items connecting the driver to a murder were found in the car, and the driver challenged the warrantless search.  (*Id.* at pp. 437–438.)

In considering the reasonableness of the search, the *Cady* court observed, "Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office.  Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature.  Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability

8

and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." (*Cady*, *supra*, 413 U.S. at p. 441; accord, *People v. Madrid* (2008) 168 Cal.App.4th 1050, 1055.) In upholding the reasonableness of the search, *Cady* reasoned that the police had properly exercised control over the disabled car "for elemental reasons of safety" because it was a "nuisance along the highway," and that the search of the car was " 'standard procedure' . . . to protect the public from the possibility that a revolver would fall into untrained or perhaps malicious hands." (*Id.* at pp. 442–443.) The court emphasized, "like an obviously abandoned vehicle, [the car] represented a nuisance," and the search was justified by the "immediate . . . concern for the safety of the general public who might be endangered if an intruder removed a revolver from the trunk of the vehicle." (*Id.* at p. 447.)

Subsequently, the United States Supreme Court referenced the vehicular community caretaking exception in *Opperman*, *supra*, 428 U.S. 364, although the case actually involved a challenge to an inventory search. In *Opperman*, an automobile was impounded for overtime parking in a restricted zone. (*Id.* at p. 365.) The contents of the car were inventoried, and the police found marijuana. (*Id.* at p. 366.) The court upheld the reasonableness of the inventory search, emphasizing the "inherent mobility of automobiles," the diminished expectation of privacy in vehicles, and the various legitimate purposes for the search. (*Id.* at pp. 367–369.) In discussing the diminished privacy in vehicles, the *Opperman* decision referenced the vehicular community caretaking exception, observing, "In the interests of public safety and as part of what the Court has called 'community caretaking functions,' [citation] automobiles are frequently taken into police

9

custody. Vehicle accidents present one such occasion. To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities. Police will also frequently remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic. The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." (*Id.* at pp. 368–369.)

Before turning to the parties' contentions regarding application of the exception in the present case, we acknowledge recent United States Supreme Court and California Supreme Court authority clarifying that there is no recognized exception to the warrant requirement for community caretaking *outside the vehicular context.* Both *Caniglia, supra,* 141 S.Ct. 1596, and *Ovieda, supra,* 7 Cal.5th 1034, *rejected* application of *Cady's* community caretaking exception in situations where police officers entered *homes* to secure weapons or search for victims following encounters with armed and suicidal persons. As *Caniglia* explained, *Cady* made an "unmistakable distinction between vehicles and homes," which is " ' "a constitutional difference" ' that the opinion repeatedly stressed." (*Caniglia,* at p. 1599; see also *id.* at p. 1600 (conc. opn. of Alito, J.) ["there is no special Fourth Amendment rule for a broad category of cases involving 'community caretaking' "].) Similarly, in *Ovieda,* the California Supreme Court observed that "the exigent circumstances exception applies to situations requiring prompt police action" and "the community caretaking exception asserted in the absence of exigency is not one of the carefully delineated exceptions to the residential warrant requirement recognized by the United States Supreme

10

Court. To date, that court has only recognized community caretaking searches in the context of vehicle impound procedures." (*Ovieda*, at pp. 1042, 1053; see also *id.* at p. 1050 ["*Cady* took great pains to distinguish between home and vehicle searches"].) Based on those recent and authoritative pronouncements, it would be inaccurate to state there is a recognized "community caretaking" exception to the warrant requirement. Instead, there is only a recognized *vehicular* community caretaking exception.

Turning to the present case, respondents' purported (and essentially *only*) support for their interpretation of the vehicular community caretaking exception is this sentence in *Opperman*, "Police will also frequently remove and impound automobiles which violate parking ordinances *and which thereby jeopardize* both the public safety and the efficient movement of vehicular traffic." (*Opperman, supra,* 428 U.S. at pp. 368–369, italics added.) But the very next sentence is, "The authority of police to seize and remove from the streets vehicles *impeding traffic or threatening public safety and convenience* is beyond challenge." (*Id.* at p. 369, italics added.) The use of the present tense in that sentence clarifies that the court was referring to the impoundment of cars actively posing a problem to the community's welfare due to their location. Respondents argue the car impounded in *Opperman* was not parked unsafely or creating a parking hazard, but they concede the car was parked at an expired meter. Accordingly, in contrast to the vehicles at issue in the present case, the car in *Opperman* was *not* lawfully parked at the time of the tow. (*Id.* at pp. 365–366.) Appellant concedes that illegally parked cars may be towed without a warrant. Thus, *Opperman* supports the proposition that illegally parked cars may be towed under the vehicular community caretaking exception, but *not* that legally parked cars may be

11

towed based solely on unpaid tickets.[10]  That respondents have failed to cite cases holding the exception justifies tows that do not address a present need is instructive.[11]

Contrary to respondents' position, in upholding tows under the vehicular community caretaking exception, courts have consistently emphasized the immediate public needs served thereby.  The limitation follows from the circumstance that "[t]he police's authority to search and seize property when acting in its role as 'community caretaker' has a different source than its authority to search and seize property to investigate criminal activity."  (*Miranda, supra,* 429 F.3d at p. 863.)  Thus, "[t]he reasonableness of an impoundment under the community caretaking function does not depend on whether the officer had probable cause to believe that there was a

---

[10] Respondents expressed concern at oral argument that portions of this court's decision could be read to suggest that tows of illegally parked vehicles, unregistered vehicles, and abandoned vehicles are not within the scope of the vehicular community caretaking exception.  We do not intend to make any such suggestion.  We hold only that section 22651, subdivision (i)(1) tows of *legally* parked cars must be justified by some present, location-based obstacle to public safety or convenience.

[11] Respondents cite cases stating parking laws promote important interests (*In re Thomas* (Bankr. N.D.Cal. 2006) 355 B.R. 166, 174), cases stating towing promotes deterrence (*Tate v. D.C.* (D.C. Cir. 2010) 627 F.3d 904, 909 (*Tate*); *Scofield v. Hillsborough* (9th Cir. 1988) 862 F.2d 759, 763; *Sutton v. City of Milwaukee* (7th Cir. 1982) 672 F.2d 644, 646), and cases upholding various towing schemes against due process challenges (e.g., *Scofield*, at pp. 762–764; *Sutton*, at pp. 644–646; *Bricker v. Craven* (D.Mass. 1975) 391 F.Supp. 601).  But respondents cite no case that concludes tows of lawfully parked cars based on unpaid tickets are within the scope of the vehicular community caretaking exception.  They do cite *United States v. Marshall* (8th Cir. 1993) 986 F.2d 1171, which states, in brief dicta, "there is no dispute that the vehicle was properly impounded" under the caretaking exception due to unpaid parking tickets.  (*Id.* at p. 1174.)  Unlike in *Marshall,* here that proposition is the focus of the dispute.

traffic violation, but on whether the impoundment fits within the 'authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience.' " (*Id.* at p. 864.) "Factors relevant to whether a particular impoundment is justified include the location of the vehicle and the likelihood it will create a hazard to other drivers or be a target of vandalism or theft." (*Halajian v. D & B Towing* (2012) 209 Cal.App.4th 1, 15 (*Halajian*); see also *People v. Williams* (2006) 145 Cal.App.4th 756, 762–763 (*Williams*) [tow served "[n]o community caretaking function" where "[t]he car was legally parked"; there was no particular "possibility that the vehicle would be stolen, broken into, or vandalized"; and the car did not "pose[] a hazard or impediment to other traffic"]; *Miranda*, at p. 866 ["[a]n officer cannot reasonably order an impoundment in situations where the location of the vehicle does not create any need for the police to protect the vehicle or to avoid a hazard to other drivers"]; accord, *Blakes v. Superior Ct.* (2021) 72 Cal.App.5th 904, 913–914; *People v. Lee* (2019) 40 Cal.App.5th 853, 867–868; *People v. Torres* (2010) 188 Cal.App.4th 775, 790 (*Torres*); *People v. Benites* (1992) 9 Cal.App.4th 309, 326 (*Benites*); *United States v. Anderson* (9th Cir. 2022) 56 F.4th 748, 756–757 (*Anderson*); *United States v. Cervantes* (9th Cir. 2012) 703 F.3d 1135, 1141–1142 (*Cervantes*); *Ramirez v. City of Buena Park* (9th Cir. 2009) 560 F.3d 1012, 1025 (*Ramirez*); *United States v. Caseres* (9th Cir. 2008) 533 F.3d 1064, 1075 (*Caseres*).)

As noted previously, appellant concedes an illegally parked car may be towed without a warrant under the vehicular community caretaking exception. (*People v. Lee, supra*, 40 Cal.App.5th at p. 867.) Additionally, in *Halajian*, the court concluded the vehicular community caretaking exception justified the towing of an unregistered truck from a parking lot because

13

leaving the truck in the lot "would have created a risk that the truck would be driven again while unregistered, either by the unlicensed plaintiff or someone with a driver's license." (*Halajian*, *supra*, 209 Cal.App.4th at p. 16.) In *Benites*, impoundment was reasonable because the vehicle was on a "dark, lonely and isolated stretch of road," and the defendant, who had a suspended license, might have driven off after the officer left. (*Benites*, *supra*, 9 Cal.App.4th at p. 326.) In *Anderson*, the Ninth Circuit upheld an impoundment because the car was parked in the driveway of another person who wanted the car removed. (*Anderson*, *supra*, 56 F.4th at p. 759.) And in *Ramirez*, the court upheld impoundment of a car following the driver's arrest where leaving the car in a parking lot "would have made it an easy target for vandalism or theft." (*Ramirez*, *supra*, 560 F.3d at p. 1025.) In contrast, the vehicular community caretaking exception has been held *not* to justify the tow of a legally and securely parked car following the arrest of an unlicensed driver (*Cervantes*, *supra*, 703 F.3d at pp. 1141–1142; *Caseres*, *supra*, 533 F.3d at p. 1075), or following the arrest of a driver on an outstanding warrant (*Williams*, *supra*, 145 Cal.App.4th at pp. 762–763).

In the present case, respondents do not argue the challenged tows involve cars that are illegally parked, create a hazard to other drivers or an obstacle to the flow of traffic, or are a target for vandalism or theft. Instead, in arguing that the challenged tows are within the scope of the vehicular community caretaking exception, respondents emphasize that "[p]arking laws promote the safe and efficient flow of traffic through the City, and thus protect the health and safety of City residents." (*In re Thomas*, *supra*, 355 B.R. at p. 174.) They argue that towing cars that accrue numerous unpaid tickets will deter violations of parking laws and that tows to achieve such deterrence are within the scope of the caretaking exception.

14

We do not doubt that the threat of impoundment may encourage compliance with parking laws, by owners at all income levels. (See *Tate, supra,* 627 F.3d at p. 909 [the possibility of a tow "deters drivers from committing traffic and parking infractions in the first instance and induces delinquents to pay penalties once incurred"]; *Deligiannis v. City of Anaheim* (C.D.Cal. Mar. 2, 2010, No. SACV-06-720) 2010 U.S. Dist. Lexis 46154, at p. *20 (*Deligiannis*) ["Presumably, towing vehicles with multiple unpaid parking citations advances the government's interest of ensuring that drivers do not park illegally and deters owners from violating parking laws."].) However, respondents cite no authority that such deterrence is a sufficient basis for a warrantless tow *of a legally parked car* under the vehicular community caretaker exception. To the contrary, the *Miranda* court expressly rejected a deterrence rationale as justification for impoundment of a vehicle that was not "actually 'impeding traffic or threatening public safety and convenience' on the streets." (*Miranda, supra*, 429 F.3d at p. 865, quoting *Opperman, supra*, 428 U.S. at p. 369.) *Miranda* explained, "While the Supreme Court has accepted a deterrence rationale for civil forfeitures of vehicles that were used for criminal activity, . . . the deterrence rationale is incompatible with the principles of the community caretaking doctrine. Unlike in civil forfeitures, where the seizure of property penalizes someone who has been convicted of a crime, the purpose of the community caretaking function is to remove vehicles that are presently impeding traffic or creating a hazard. The need to deter a driver's unlawful conduct is by itself insufficient to justify a tow under the 'caretaker' rationale." (*Miranda*, at p. 866; accord, *Torres, supra*, 188 Cal.App.4th at p. 792; *Sandoval v. Cnty. of Sonoma* (9th Cir. 2018) 912 F.3d 509, 516; *Caseres, supra*, 533 F.3d at p. 1075; *Brewster v. City of Los Angeles* (C.D.Cal., May 9, 2023, No. EDCV 14-

15

2257) 2023 U.S. Dist. Lexis 82369, __ F.Supp.3d __ at pp. *97–100; *Fitzpatrick v. City of Los Angeles* (C.D.Cal. Jan. 20, 2022, No. CV 21-6841) 2022 U.S. Dist. Lexis 24539, at p. *12, fn. 4 (*Fitzpatrick*); *Pina v. City of Long Beach* (C.D.Cal. June 28, 2019, No. 2:17-cv-00549-PA) 2019 U.S. Dist. Lexis 182032, at pp. *27–28 (*Pina*); *Deligiannis*, at p. *23.)

Several California federal district court decisions have followed *Miranda* in concluding that tows of legally parked cars based on unpaid tickets are *not* within the vehicular community caretaking exception. The court in *Deligiannis*, *supra*, 2010 U.S. Dist. Lexis 46154, in addressing a motion for summary judgment, concluded a tow based on unpaid tickets was not justified under the exception. (*Id.* at p. *22–23.) The court followed the numerous decisions holding the exception only applies to tows addressing a present need, and followed *Miranda* in rejecting as "sufficient to justify a warrantless tow under the caretaker rationale" that "impounding a vehicle for unpaid parking tickets advances the legitimate state interest of deterring drivers from violating parking laws." (*Deligiannis*, at p. *23.) Similarly, the court in *Fitzpatrick*, *supra*, 2022 U.S. Dist. Lexis 24539, in addressing a motion to dismiss, rejected the deterrence rationale and observed, "There is a distinction, from a community caretaking perspective, between removal of an illegally parked car with multiple unpaid citations and a legally parked car with multiple unpaid citations." (*Id.* at p. *11; see also *Pina*, *supra*, 2019 U.S. Dist. Lexis 182032, at pp. *27–28 [following *Miranda* in addressing motion for summary judgment]; *Smith v. Reiskin* (N.D.Cal. Oct. 10, 2018, No. C 18-01239) 2018 U.S. Dist. Lexis 224312, at pp. *6–9 [following *Miranda* in granting preliminary injunction]; *Washington v. Los Angeles Dep't of Transportations* (C.D.Cal. Dec. 15, 2015, No. LA CV 15-6278) 2015 U.S. Dist.

16

Lexis 168389, at pp. *8–9 [following *Miranda* in addressing motion to dismiss].)

Respondents argue that *Miranda*, *Williams*, and other cases limiting application of the vehicular community caretaking exception to situations where a tow serves a present, location-based need are distinguishable. They contend those cases had no occasion to consider the type of deterrence rationale proffered in the present case because those cases addressed "only the question of what officers can do with a vehicle after they have separated the vehicle from its driver, and have cited or arrested its driver on grounds that have nothing to do with that specific vehicle and its history." It is true that most of the cases cited above do not expressly reject respondents' precise deterrence rationale for tows of cars with unpaid parking tickets (although *Fitzpatrick*, *Pina*, and *Deligiannis* do reject that specific rationale). Nevertheless, as explained above, numerous cases have emphasized that tows under the caretaking exception must address some present need of safety or convenience. And *Miranda* and its progeny have expressly rejected the argument that deterring future misconduct can justify a tow under the exception, because that justification would not address a present need based on the location of the towed vehicle. Respondents' deterrence rationale is squarely inconsistent with the reasoning of those cases.

The *Miranda* court also expressed a concern that adopting a deterrence rationale "would expand the authority of the police to impound regardless of the violation, instead of limiting officers' discretion to ensure that they act consistently with their role of 'caretaker of the streets.'" (*Miranda, supra*, 429 F.3d at p. 866.) And, although there is no suggestion of it in this case, we should not ignore that purported caretaking tows may also conceal a criminal law "investigatory motive." (*Torres, supra*, 188 Cal.App.4th at p. 789; see

17

also *Opperman, supra*, 428 U.S. at p. 376 [stating "there is no suggestion whatever" that the impound and search "was a pretext concealing an investigatory police motive"]; *Blakes v. Superior Ct., supra*, 72 Cal.App.5th at pp. 913–915; *People v. Lee, supra,* 40 Cal.App.5th at pp. 867–869.) The tows at issue in the present case do not present concerns about the breadth of law enforcement discretion because the tows are effectuated pursuant to statutory authorization and a clearly articulated policy. (See *Torres*, at p. 787 ["[s]tatutes authorizing impounding under various circumstances 'may constitute a standardized policy guiding officers' discretion' "].) However, prior cases have consistently rejected application of the vehicular community caretaking exception to justify a tow absent a present need, and respondents cite no case suggesting the warrant requirement serves *only* to restrain law enforcement discretion. We agree with *Williams* that, even though a Vehicle Code provision that authorizes a tow "may constitute a standardized policy guiding officers' discretion," "[t]he impoundment must still serve a community caretaking function." (*Williams, supra*, 145 Cal.App.4th at p. 763.)

It is critical to recognize that, as appellant and amici argue, vehicle tows are a significant intrusion on property rights that may seriously impact the lives of the owners. (See *Clement v. City of Glendale* (9th Cir. 2008) 518 F.3d 1090, 1094 ["Normally, of course, removal of an automobile is a big deal, as the absence of one's vehicle can cause serious disruption of life in twenty-first century America."]; *Stypmann v. City & Cnty. of San Francisco* (9th Cir. 1977) 557 F.2d 1338, 1342–1343 ["The private interest in the uninterrupted use of an automobile is substantial. A person's ability to make a living and his access to both the necessities and amenities of life may

18

depend upon the availability of an automobile when needed."].)  The Fourth Amendment warrant requirement protects those property interests.[12]

Respondents contend that acceptance of appellant's position on appeal will allow vehicle owners to ignore parking laws "with impunity," thus harming public health and safety.  They argue, "[b]ecause of the inherent mobility of motor vehicles . . . if cities could not tow vehicles that had accumulated thousands of dollars' worth of unpaid parking citations without first obtaining some sort of judicial warrant or other court order . . . the practical result would likely be that cities could not tow such vehicles at all."  However, respondents, which bear the burden of justifying the tows at issue in the present case (*Miranda, supra*, 429 F.3d at p. 862), have not shown warrantless tows are necessary to enforce their parking scheme.  For example, currently available judicial and administrative processes allow for the collection of unpaid parking debts and deter violations.[13]  (See *People v.*

---

[12] To the extent appellant and amici suggest the cars of people who cannot afford to pay tickets should not be towed at all, that is an argument properly directed to the Legislature, which has authorized the impoundment of cars with unpaid parking tickets.  But appellant and amici do raise legitimate concerns.  (See, e.g., *Rivera v. Orange Cnty. Prob. Dep't* (9th Cir. 2016) 832 F.3d 1103, 1112, fn. 7 ["Raising money for government through law enforcement whatever the source—parking tickets, police-issued citations, court-imposed fees, bills for court appointed attorneys, punitive fines, incarceration charges, supervision fees, and more—can lay a debt trap for the poor."].)

[13] As appellant points out, the Vehicle Code provides alternative methods for collecting on unpaid parking tickets.  Section 40220, subdivision (a) provides for the filing of "an itemization of unpaid parking penalties . . . for collection with the registration of the vehicle."  (See also § 4760 [with exceptions, no renewal of registration if parking penalties unpaid].)  And section 40220, subdivision (a)(2)(A) provides that proof of unpaid penalties on parking tickets greater than $400 "may be filed with the court and shall have the same effect as a civil judgment.  Execution may be levied and other measures may be taken for the collection of the judgment as are authorized

*Ray* (1999) 21 Cal.4th 464, 478, disapproved on another ground in *Ovieda*, *supra*, 7 Cal.5th at p. 1038 (lead opn. of Brown, J.) [the availability of alternatives is "not dispositive," but it is relevant "in the totality of the circumstances to determine the ultimate reasonableness" of a caretaking intrusion].) In response to a request for supplemental briefing, respondents concede that the record "does not contain evidence proving that it would be infeasible 'to use the statutory procedures in []section 40220' . . . in order to enforce the statutory scheme of parking laws." Accordingly, we do not accept respondents' assertion that warrantless tows are *necessary* to enforce their parking scheme.[14] And nothing in our opinion prohibits statutorily authorized warrantless tows of any illegally parked vehicles, unregistered vehicles, or vehicles presenting some other immediate need for a tow.

---

for the collection of an unpaid civil judgment entered against a defendant in an action on a debtor. . . . The person or registered owner shall also be notified . . . that execution may be levied against their assets, liens may be placed against their property, their wages may be garnished, and other steps may be taken to satisfy the judgment." (See also *In re Thomas*, *supra*, 355 B.R. at p. 169 [in bankruptcy action, describing efforts to collect on unpaid San Francisco parking tickets, including request for payment during car registration process, collection agency notices, and Franchise Tax Board demand for payment].)

[14] In their supplemental brief, respondents argue they are not required to show their towing policy is the " ' "least intrusive" ' " means of enforcing their parking scheme, quoting *Colorado v. Bertine* (1987) 479 U.S. 367, at page 374. We impose no such burden. Rather, respondents have argued that, although their tows of legally parked cars address no immediate public needs, they are nonetheless community caretaking because the tows are necessary to deter parking violations and nonpayment of tickets. Absent an evidentiary showing supporting that assertion, we give it no weight in our analysis. We also reject respondents' new argument in their supplemental brief that the mobile nature of vehicles alone gives rise to an exigency that excuses obtaining a warrant. Respondents have demonstrated no exigent need to tow legally parked cars.

20

Respondents have a legitimate and important interest in "securing compliance with and deterring violations of parking regulations" and in the "collection of revenues." (*Rackley v. City of New York* (S.D.N.Y. 2002) 186 F.Supp.2d 466, 478 (*Rackley*).) We also acknowledge the possibility that towing may deter repeat violations. (See *Tate, supra*, 627 F.3d at p. 909; *Deligiannis, supra*, 2010 U.S. Dist. Lexis 46154, at pp. *19–20.) However, although the desire to deter non-compliance with parking laws is a legitimate goal, respondents have failed to cite any cases relying on that rationale to approve vehicle tows under the vehicular community caretaking exception. We follow the overwhelming weight of authority that has limited caretaking tows to those that address present, location-based obstacles to public safety or convenience, and decline respondents' invitation to expand the scope of the exception to embrace tows that serve less immediate public needs.[15]

III.  *Respondents Have Not Shown the Challenged Tows May Be Upheld Under a Forfeiture Rationale*

As noted previously, respondents have the burden of demonstrating that the warrantless seizures at issue in the present case fall within a " ' "specifically established and well-delineated" ' " exception to the Fourth

---

[15] Appellant also argues that a 2018 amendment to the Vehicle Code reflects the Legislature's agreement that the caretaking exception has a limited scope. In particular, the Legislature added subdivision (b) to section 22650 (Stats. 2018, ch. 592, § 1, eff. Jan. 1, 2019 (Assem. Bill No. 2876 (2017–2018 Reg. Sess.)), stating that any "removal pursuant to an authority, including … Section 22651, that is based on community caretaking, is *only reasonable if the removal is necessary to achieve the community caretaking need, such as ensuring the safe flow of traffic or protecting property from theft or vandalism.*" (§ 22650, subd. (b), emphasis added.) Because we agree with the case authorities that have limited the scope of the exception, we need not and do not consider appellant's arguments based on the amendment to the Vehicle Code.

Amendment's warrant requirement. (*Ovieda, supra*, 7 Cal.5th at p. 1041.) The vehicular community caretaking exception is the only exception specifically argued by respondents in their brief on appeal. Respondents' brief does, however, cite one case that upholds warrantless tows for unpaid tickets on another ground: *Tate, supra*, 627 F.3d at page 909, characterized the District of Columbia's towing regulations as a "progressive forfeiture" scheme and upheld warrantless tows on that basis. We decline to follow *Tate's* reasoning.[16]

In *Tate*, District of Columbia regulations authorized the booting and towing of vehicles with unpaid parking citations. (*Tate, supra*, 627 F.3d at pp. 906, 909.) The regulations also permitted towed cars that went unclaimed for 45 days to be declared abandoned and sold at auction. (*Id.* at p. 909.) The plaintiff in *Tate* challenged the towing and subsequent sale of her car on various grounds, including under the Fourth Amendment. Consistent with this court's conclusion in Part II, *ante, Tate* determined that the impoundment could *not* be justified under the vehicular community caretaking exception. (*Id.* at p. 911, fn. 7.) Nevertheless, *Tate* reasoned that "[t]he District's practice of auctioning a vehicle when tickets go unpaid is the culmination of a sort of graduated forfeiture process," "which both deters drivers from committing traffic and parking infractions in the first instance and induces delinquents to pay penalties once incurred." (*Tate*, at p. 909.) In rejecting the plaintiff's claim that the warrantless seizure was unreasonable, *Tate* concluded, "Like other forfeiture statutes, the District's booting and towing provisions can be effected by the warrantless seizure of a vehicle

---

[16] Respondents' initial brief on appeal cited *Tate* but did not clearly embrace the decision's reasoning. In a supplemental brief, respondents asked this court to affirm under *Tate's* reasoning if this court rejected application of the vehicular community caretaking exception.

subject to impoundment thereunder." (*Id.* at p. 911.) *Tate* relied upon the United Supreme Court's decision in *Florida v. White* (1999) 526 U.S. 559 (*White*). (*Tate*, at pp. 911–912.)

In *White*, *supra*, 526 U.S. 559, the Supreme Court addressed a challenge to a warrantless seizure of a car by Florida police, while it was parked in a public parking lot. (*Id.* at p. 566.) The court upheld the warrantless seizure; the police had probable cause to believe the vehicle was contraband subject to forfeiture under the Florida Contraband Forfeiture Act because they had observed it being used to deliver cocaine on three occasions. (*White*, at p. 561.) *White* pointed to a prior decision concluding that, "at the time of the adoption of the Fourth Amendment," warrants were not required to search and seize contraband on ships. (*White*, at p. 564.) The court reasoned that, if a warrant is not required prior to searching a car and seizing contraband where officers have probable cause to believe the car contains contraband, officers did not need a warrant before seizing a car where they "had probable cause to believe that the vehicle *itself* was contraband under Florida law." (*Id.* at p. 565; see also *United States v. Mendoza* (7th Cir. 2006) 438 F.3d 792, 796 [" '[t]he weight of authority . . . holds that police may seize a car without a warrant pursuant to a forfeiture statute if they have probable cause to believe that the car is subject to forfeiture' "].)

The *Tate* court concluded the reasoning of *White* and its progeny "appl[y] to the District's progressive forfeiture regime" because "the auction sale for delayed payment is comparable to a forfeiture that occurs as a result of a criminal [act]." (*Tate*, *supra*, 627 F.3d at p. 912; see also *Kosyla v. City of Des Plaines* (7th Cir. 2007) 256 F.Appx 823, 825 [adopting same reasoning as

23

*Tate*]; *Berger v. Philadelphia Parking Authority* (E.D.Penn. 2019) 413 F.Supp.3d 412, 418 [following *Tate* with little analysis].)

We disagree with *Tate* to the extent it is read to treat *White* as establishing an exception to the warrant requirement absent probable cause to believe a seized car is actually subject to forfeiture. (*White, supra*, 526 U.S. at pp. 561–562.) Under the statutory scheme at issue in *Tate*, the plaintiff's car was only subject to forfeiture (sale by auction) *if*, after impoundment, it went unclaimed for 45 days. (*Tate, supra*, 627 F.3d at p. 908.) Respondents concede that cars impounded under section 22651, subdivision (i)(1) are *not* subject to forfeiture when towed because the statute allows an owner to recover a vehicle by paying outstanding penalties. A car cannot be considered property subject to warrantless seizure under *White* because at some *future* point it *might* become subject to forfeiture.

Without citing *Tate*, a 2015 New York federal district court decision rejected its reasoning, based on the distinction between probable cause that a car is subject to impoundment rather than subject to forfeiture. *Harrell v. City of New York* (S.D.N.Y. 2015) 138 F.Supp.3d 479 (*Harrell*), explained, "When property is seized because there is probable cause to believe that it is contraband or otherwise forfeitable, seizure is the first step in a process to terminate a possessory interest in the property seized—the seizing officer has probable cause to believe that the right abridged (ownership of the property) is a right that no longer exists. [Citation.] When property is seized as evidence or instrumentality of a crime, there is probable cause to believe that, until the termination of criminal proceedings, the government has an interest in the property that is superior to the owner's interest. [Citations.] The 'probable cause' in [a New York City code authorizing seizure of vehicles being unlawfully operated for hire], however, bears no nexus to the right that

24

the seizure abridges. Because the statute does not authorize forfeiture of first-time violators' vehicles and by policy forfeiture is not sought even with second- and third-time violators, probable cause to believe that the statute has been violated means only that there is probable cause to believe that the owner may be liable for a fine. It does not mean that there is probable cause to believe that the City has—even temporarily—a superior claim to the vehicle than its owner."[17] (*Id.* at p. 491; accord, *Santander Consumer USA, Inc. v. Cnty. of Nassau* (E.D.N.Y. 2022) 623 F.Supp.3d 6, 16, fn. 10; cf. *DeCastro v. City of New York* (S.D.N.Y. 2017) 278 F.Supp.3d 753, 768–769 [considering whether record showed inspectors had " 'probable cause to believe' " the vehicles at issue in the case were statutorily " 'subject to forfeiture' "].) Because the car in *Tate* was not subject to forfeiture at the time of impoundment, we believe the court erred in analogizing the situation to that in *White*; and, because the cars at issue in the present case are not subject to forfeiture at the time of towing, the warrantless tows may not be upheld under a forfeiture rationale.[18]

---

[17] Respondents attempt to distinguish *Harrell* on the basis that in that case the owners of the towed vehicles had not yet been assessed fines. But that reflects a misunderstanding of the decision's reason for rejecting application of a forfeiture exception. The absence of an assessed fine was not determinative because the city in that case *did* have probable cause the owner was subject to a fine; the problem was that the city did *not* have probable cause the car was subject to *forfeiture.* (*Harrell*, *supra*, 138 F.Supp.3d at p. 491.)

[18] *Tate* also reasoned that the auction sale was "comparable . . . to a forfeiture under the Internal Revenue Code." (*Tate*, *supra*, 627 F.3d at p. 912.) *Tate* cited *G.M. Leasing Corp. v. United States* (1977) 429 U.S. 338, in which the Supreme Court held that a warrant was not required to seize publicly parked cars where the Internal Revenue Service was authorized by statute to seize personal property to satisfy tax liens. (*G.M. Leasing*, at pp. 349, 351–352.) In the present case, the parties did not cite *G.M. Leasing* in either their original briefs or their supplemental briefs, but the decision

25

The decision in *Rackley, supra,* 186 F.Supp.2d 466, which preceded the *Tate* decision, is also instructive. In *Rackley*, an automobile owner alleged that multiple warrantless seizures of his vehicle were unreasonable and a violation of due process. (*Rackley*, at pp. 468–469.) Although, like *Tate*, the decision analogized the seizures to the forfeiture in *White*, *Rackley* emphasized that there were "multiple default judgments against [the plaintiff] for his alleged failure to pay the fines and penalties to which the City claimed entitlement," and the plaintiff's car was seized "to satisfy the judgments they claim he then owed." (*Id.* at p. 468.) The *Rackley* court relied in part on the decision in *Schneider v. Cnty. of San Diego* (9th Cir. 1994) 28 F.3d 89, where the Ninth Circuit concluded no warrant was required to seize vehicles pursuant to a nuisance abatement order, where the " 'abatement hearing was sufficient to establish the validity and reasonableness of the seizure.' " (*Id.* at p. 92.) Similarly, in *Rackley*, a warrant was not required to seize the plaintiff's car from a public street "pursuant to … default judgments entered pursuant to a neutral administrative process." (*Rackley*, at p. 472.)

---

undermines appellant's contention that *Tate* erred in extending *White's* reasoning to the civil forfeiture context. The *G.M. Leasing* decision is not otherwise helpful in elucidating the forfeiture rationale for warrantless seizures that invade property interests, because the only issue addressed in *G.M. Leasing* was whether the seizures invaded privacy interests. We do observe that the result in *G.M. Leasing* is consistent with the result in the present case, because the automobiles at issue in *G.M. Leasing* were subject to forfeiture—and not just impoundment—at the time of seizure. (See *G.M. Leasing*, at p. 352, fn. 18 [observing that "a tax assessment 'is given the force of a judgment, and if the amount assessed is not paid when due, administrative officials may seize the debtor's property to satisfy the debt' "]; 26 U.S.C.A. § 6331 ["In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property. . ."].)

26

In their supplemental brief, respondents argue that, even though the cars towed are not subject to forfeiture, it is enough that their towing regime is (using *Tate's* language) " 'the equivalent of,' 'a sort of,' and 'comparable to' " a forfeiture regime. (See *Tate, supra*, 627 F.3d at pp. 911, 909, 912.) That argument disregards that the foundation for the forfeiture exception is the government's superior property interest, which is absent in the present case. Further, a warrant exception applicable to any government action that is "sort of" like a forfeiture process is not " ' "specifically established and well-delineated." ' " (*Ovieda, supra*, 7 Cal.5th at p. 1041.) It may be that in the future the United States Supreme Court will articulate and clearly define an exception to the warrant requirement that reaches property not actually subject to forfeiture at the time of seizure. But, because respondents have not shown that any such exception exists, the warrantless tows at issue in the present case may not be upheld by analogy to the forfeiture rationale in *White, supra*, 526 U.S. 559.[19]

---

[19] Respondents also argue in passing that the challenged towing practice is reasonable because many municipalities perform similar tows. But respondents cite no authority a practice is reasonable under the Fourth Amendment simply because it is widespread. Respondents also cite several other federal court cases approving tows of cars with unpaid tickets, under elusive rationales requiring only brief comment. *Oberhausen v. Louisville-Jefferson Cnty. Metro Gov't* (W.D.Ky. 2007) 527 F.Supp.2d 713, 728, reasoned the defendant's towing scheme did not violate the Fourth Amendment because the plaintiffs had received "notice of their parking violations." But the decision cites no authority that notice of the possibility of a seizure is sufficient justification to dispense with the warrant requirement. *Waters v. Howard Sommers Towing, Inc.* (C.D.Cal. June 30, 2011, No. CV 10-5296) 2011 U.S. Dist. Lexis 158890, rejected the plaintiff's Fourth Amendment claim because of inadequate allegations and it appears the car at issue was illegally parked when towed. And, finally, the decision in *Scheidecker v. City of Napa* (N.D.Cal. Oct. 17, 1994, No. C 93-4473) 1994 U.S. Dist. Lexis 15136,

27

## DISPOSITION

The trial court's judgment is reversed, and the matter is remanded for further proceedings consistent with this decision.  Costs on appeal are awarded to appellant.

_____

SIMONS, J.

We concur.

_____

JACKSON, P. J.

_____

CHOU, J.

(A164180)

_____

rejects the plaintiff's Fourth Amendment claim with no reasoning whatsoever.

## Coalition on Homelessness v. City and County of San Francisco, et al. (A164180)

Trial Judge:          Hon. Ethan P. Schulman

Trial Court:          San Francisco County Superior Court

Attorneys:

      Munger, Tolles & Olson, Rohit K. Singla, J. Max Rosen; Bay Area Legal Aid, Novella Y. Coleman, Sasha Ellis; Lawyers' Committee for Civil Rights of the San Francisco Bay Area, Zal K. Shroff and Elisa Della-Piana for Plaintiff and Appellant.

      Eliana Machefsky; All Rise Trial and Appellate and Jim Davy for the National Police Accountability Project and Roderick & Solange MacArthur Justice Center as Amici Curiae on behalf of Plaintiff and Appellant.

      Milbank, Mark Shinderman, Asena Baran, Mohammad Tehrani; Law Foundation of Silicon Valley, Jeremy Chen; Public Counsel, Nisha Kashyap; Legal Aid Foundation of Los Angeles and Shayla Myers for San Francisco Public Defender's Office, Disability Rights California, Western Center on Law and Poverty, UNITE HERE Local 11, FreeFrom and National Homelessness Law Center as Amici Curiae on behalf of Plaintiff and Appellant.

      David Chiu, City Attorney, and Wayne K. Snodgrass, Deputy City Attorney, for Defendants and Respondents.